## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

Jeleice Williams ("Employee") and True North Management, LLC (the "Company") (Employee and the Company collectively referred to as the "Parties") enter into this Confidential Settlement Agreement and Release (the "Agreement"). In consideration of the mutual promises set forth below, Employee and the Company agree as follows:

1. *Employee's Right to Review this Agreement and Consult a Lawyer.* Employee has the right to review this Agreement and to consult a lawyer of her own choice before signing it. If Employee has signed this Agreement, it is only because she has read and understood all of it, and because she has already consulted a lawyer if she wanted to. Employee agrees that she is entering into this Agreement voluntarily and without any coercion from anyone.

2. *Judicial Approval.* The Parties are entering into this Agreement on condition that it is approved in its entirety by the United States District Court for the Northern District of Ohio ("Court"). The Parties agree that they will cooperate and take all steps necessary and appropriate to obtain approval of the settlement, to effectuate its terms, and to dismiss the action with prejudice. The Parties will jointly file a written request with the Court for approval of the settlement set forth in this Agreement. The Parties shall work together to obtain the Court's approval of this settlement. The Parties understand that the approval process may require them to furnish and sign additional documents, travel to Cleveland, Ohio for court appearances, give written and/or oral testimony to the Court, and engage in other similar activities. The Parties shall neither request nor receive any additional consideration for engaging in such activities beyond that which is already stated in this Agreement. If for any reason the Court declines or otherwise fails to approve this Agreement as written, then this Agreement shall be null and void and of no legal effect and the Parties shall not attempt to introduce it into evidence in any legal proceeding for any purpose.

3. *Company's Payment to Employee.* In consideration of the terms and conditions of this Agreement, the Company agrees to pay Employee the total sum of
( , payable as follows:

   o A check for ( ), minus all applicable withholdings, in accordance with Employee's previously elected wage withholding instructions, made payable to "Jeleice Williams" for allegations of lost wages. The Company will issue a Form W-2 for this payment.

   o A check for made payable to "Jeleice Williams," for allegations of liquidated damages. The Company will issue a Form 1099 for this payment.

   o A check for made payable to "The Spitz Law Firm LLC" for allegations of attorneys' fees and costs. The Company will issue Forms 1099 for this payment.

The Company will send these payments to Employee's attorney Christopher P. Wido, The Spitz Law Firm LLC, 25220 Chagrin Blvd., Suite 200, Beachwood, Ohio 44122 within fifteen (15) calendar days after the Company's counsel receives the Agreement executed by Employee or

within fifteen (15) calendar days after the Court enters an Order granting approval of this settlement and Agreement or within fifteen (15) calendar days after the Company's attorney receives W-9 Forms for Employee and The Spitz Law Firm LLC, whichever is later. Employee understands that the Company is offering to pay her this money only in exchange for the promises she makes in this Agreement.

Other than the employer required portion of W-2 taxes or other taxes the Company may owe on the money described above, Employee is solely responsible for the payment of any taxes she owes associated with the money described above, and hereby agrees to indemnify and hold harmless the Company for any and all claims, demands, deficiencies, fines, penalties, levies, assessments, executions, garnishments, judgments, losses, costs or recoveries, including, but not limited to, attorneys' fees and litigation expenses, incurred by the Company relating in any way to such taxes owed by Employee. The Company hereby agrees to indemnify and hold harmless Employee for any and all claims, demands, deficiencies, fines, penalties, levies, assessments, executions, garnishments, judgments, losses, costs or recoveries, including, but not limited to, attorneys' fees and litigation, expenses incurred by Employee relating in any way to taxes owed by the Company.

4. *General Release of Claims by Employee*. Employee releases the Company and all of its past, present, and future owners, parent companies, divisions, affiliates, related companies, properties, subsidiaries, holding companies, predecessor companies, investors, insurers, employees, respective officers, directors, board members, stockholders, managers, attorneys, agents, representatives, predecessors, successors, assigns, and employee benefit plans and programs and their administrators and fiduciaries (collectively the "Releasees") from all known or unknown claims, causes of action, and liabilities, regardless of their kind, arising at any time prior to the moment Employee signs this Agreement. Employee understands and agrees that "Releasees" includes True North Energy LLC and True North Holdings, Inc.

Employee understands that this release includes, but is not limited to, the following subject matters: any claimed liability for wages, commissions, bonuses, employment benefits, attorneys' fees, or damages of any kind whatsoever; any claim arising out of any contract, express or implied; any claim arising from an alleged breach of the covenant of good faith and fair dealing, express or implied; any tort claim; any claim of wrongful or constructive discharge or violation of public policy; and any claim arising under any federal, state, or local statute or ordinance, including but not limited to: the Fair Labor Standards Act (29 U.S.C. § 201 et seq.); the National Labor Relations Act, as amended (29 U.S.C. § 141 et seq. and 29 U.S.C. §151 et seq.); Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991 (42 U.S.C. § 2000e et seq.); Sections 1981 through 1988 of Title 42 of the United States Code; the Employee Retirement Income Security Act of 1974, as amended (29 U.S.C. § 1001 et seq.); the Immigration Reform and Control Act of 1986 (8 U.S.C. § 1101 et seq.); the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.), as amended (42 U.S.C. § 12101 et seq.); the Age Discrimination in Employment Act of 1967, as amended by the Older Workers Benefit Protection Act (29 U.S.C. § 621 et seq.); the Family and Medical Leave Act, as amended (29 U.S.C. § 2601 et seq.); the Worker Adjustment and Retraining Notification Act of 1988 (29 U.S.C. § 2101 et seq.); the Sarbanes-Oxley Act (18 U.S.C. § 1514A et seq.); and any other statutory claim for discrimination, workplace harassment, or retaliation. This release does not include any claim, cause of action, or liability arising out of acts or occurrences that take place after Employee signs this Agreement.

2

Employee understands that the release she is giving includes claims that she does not have knowledge of at this time. Employee also understands that by signing this Agreement, she gives up her right to sue or pursue any claim or lawsuit against the Company or any of the other Releasees for anything that occurred prior to the date he signed this Agreement. Nothing in this Agreement shall be construed to impair Employee's ability to bring a lawsuit to enforce this Agreement.

5. ***Receipt of Employment Benefits***. Upon receipt of the payment in Paragraph 3, Employee will have been paid in full for all hours that she alleges that she worked for the Company including all overtime, and will have received all of the wages, payments, vacation, wage statements, leaves of absence, meal and rest breaks, and other rights and benefits to which she was entitled under federal, state, and local law, including the Fair Labor Standards Act, as amended (29 U.S.C. § 201 et seq.); the Uniformed Services Employment and Reemployment Act, as amended (38 U.S.C. § 4301 et seq.); and all state and local laws of similar effect. Upon receipt of the payment in Paragraph 3, neither the Company nor any other Releasee will owe Employee anything for any unpaid wages, overtime, or accrued and unused vacation time. Employee has received reimbursement for all expenses that she incurred as part of her job with the Company.

6. ***Dismissal of Action with Prejudice***. Employee filed a Complaint and an Amended Complaint with the Court, Case No. 1:17-cv-02028 (collectively the "Complaint"), which Employee releases as part of this Agreement. Not including the Complaint, Employee represents and warrants that he has not filed any other complaints, charges, or lawsuits against the Company or any of the other Releasees.

7. ***No New Legal Proceedings***. Employee and the Company agree not to file any new lawsuits or claims against each other or any of the other Releasees based on any claim they are releasing in this Agreement.

8. ***Administrative Proceedings***. Notwithstanding any other provision of this Agreement, Employee remains free to file administrative charges or complaints with government agencies, such as the Equal Employment Opportunity Commission and the National Labor Relations Board, and remains free to participate in investigations and proceedings being conducted by those agencies. However, except where prohibited by law, Employee gives up her right to recover damages or any other type of relief that such an agency might obtain on her behalf.

9. ***Employee Has Not Sold or Assigned Any Claims***. Employee is the sole legal and equitable owner of all of the rights, claims, and causes of action that he releases in this Agreement. Employee has not assigned, sold, transferred, or encumbered any of these rights, claims, and causes of action to anyone else. Employee understands that the Company is relying on Employee's representations in making their own decisions to enter into this Agreement.

10. ***No Admission of Wrongdoing***. Employee understands that the Company is not admitting any wrongdoing by signing this Agreement and that nobody should interpret this Agreement as an admission by the Company that they did anything wrong or illegal.

11. ***Employee Agrees to Cooperate***. If a federal, state, or local administrative agency is required to approve this Agreement before it can be effective, Employee agrees to cooperate and perform any act necessary or requested to bring about that approval.

3

**12.** *References.* Employee agrees that she will direct all employment inquiries to Kim Crippen, e-mail address kcrippen@truenorth.org, or her successor, who will respond by providing only dates of employment and last position held.

**13.** *Confidentiality and Non-Disparagement.* Employee agrees to keep confidential the existence of this Agreement, the terms of this Agreement, and any facts regarding the claims underlying this Agreement. Employee will not disclose any information about this Agreement orally, in writing or via social media, including its existence, to anybody other than her spouse, lawyers, or financial advisors but only if they first also agree to keep the existence and terms of this Agreement confidential. Employee also can show this Agreement to government agencies and officials if they request it. Employee understands that any violations of the confidentiality provisions of this Paragraph will be deemed an unauthorized disclosure that will damage the goodwill of the True North Management LLC and other Releases and substantially impair their ability to defend or settle other potential lawsuits or claims. This is a material provision of this Agreement.

The Company agrees to keep confidential the existence of this Agreement, the terms of this Agreement, and/or facts regarding the claims underlying this Agreement. The Company will not disclose any information about this Agreement orally, in writing or via social media, including its existence, to anybody other than the Company's lawyers, insurers, reinsurers, financial advisors, or any other employee necessary to implement the terms of this Agreement, but only if they first also agree to keep the existence and terms of this Agreement confidential. The Company also can show this Agreement to government agencies and officials if they request it. The Company understands that any violations of the confidentiality provisions of this Paragraph will be deemed an unauthorized disclosure that will damage the goodwill of Employee. This is a material provision of this Agreement.

Notwithstanding anything to the contrary, nothing in this Agreement shall prevent the disclosure of confidential information or the terms hereunder to the Court, lawyers, accountants, auditors, insurers/reinsurers (if any), together with such insurers/reinsurers' third party service providers, actuaries or intermediaries (collectively "Recipients") or regulators, provided the disclosure of the information is reasonably necessary to effectuate the terms of this Agreement, or is required for tax, financial reporting, or governmental compliance purposes, or to transact the business of insurance. Prior to disclosure, the Recipient shall be informed of the confidential nature of the information.

**14.** *Waiver.* The failure of either Employee or the Company to require performance by the other of any provision of this Agreement shall in no way affect the right to require performance at any time thereafter, nor shall the waiver of a breach of any provision of this Agreement operate as a waiver of any succeeding breach of such provision or as a waiver of the provision itself. Further, the Parties agree that the delay by any Party in exercising their rights under this Agreement will not operate as a waiver of such rights.

**15.** *Governing Law and Forum Selection.* The provisions of this Agreement shall be governed by, and construed in accordance with, the laws of the State of Ohio.

**16.** *Jointly Drafted.* The Parties and their respective lawyers each participated in the drafting of this Agreement.

4

17.  *Severability and Reformation*.  The Company and Employee intend for all of the provisions of this Agreement to be severable and reformable.  If any part of this Agreement is found to be unlawful or unenforceable, the Company and Employee want every other part of this Agreement to remain fully valid and enforceable to the maximum extent permitted by law, and the Company and Employee want the Court to have the power to modify provisions to make them enforceable.

18.  *Execution in Counterparts*.  The Parties agree that this Agreement may be executed in one or more counterparts, each of which will be deemed an original.  The Parties further agree that a signature via facsimile, pdf, or other electronic transmission will be deemed the same as an original.

19.  *Headings*.  The Headings in this Agreement exist only for the sake of convenience.  The Headings do not constitute part of Employee's agreement with the Company.

20.  *This Document Contains the Parties' Entire Agreement*.  The text of this Agreement contains the entire understanding between the Company and Employee with respect to the covered subject matters.  There are no other agreements, contracts, or promises between them on these subject matters other than those set forth in this Agreement, and this Agreement supersedes all other earlier agreements, contracts, understandings, and promises made between them, whether express or implied.  However, the Company and Employee agree that notwithstanding this Paragraph any non-competition, non-disclosure, or confidentiality agreements that may exist between them will continue to be in full force and effect.  To the extent that those agreements conflict with this Agreement, this Agreement shall control.  Employee and the Company, in making their decision to sign this Agreement, are not relying on any promise that the other party or its employees or agents have made to them, other than the promises that are actually set forth in writing in the text of this document.

**DO NOT SIGN BELOW UNLESS YOU HAVE READ AND UNDERSTAND THIS ENTIRE DOCUMENT AND AGREE TO BE BOUND BY IT.**

I indicate my assent to this Agreement by signing below:

*Jeleice Williams:*
Signed: ___[signature]___
Date Signed: 7/03/2018

*On behalf of True North Management LLC*
Signed: ___[signature]___
Print Name: MARK F LYDEN
Print Title: President
Date Signed: 7-11-18

5